IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURIE B.,[1]                                                    Case No. 6:20-cv-02173-JR

              Plaintiff,                                  OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

              Defendant.
_____

RUSSO, Magistrate Judge:

      Plaintiff Laurie B. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Disability

Insurance Benefits and Social Security Income under the Social Security Act. All parties have

consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Commissioner's decision is reversed, and this case is remanded for immediate payment of benefits.

## PROCEDURAL BACKGROUND

Born in 1969, plaintiff alleges disability beginning September 23, 2017, due to fibromyalgia, degenerate arthritis, high blood pressure, cholesterol, right and left knee pain, lump in breast, inflammation disorder, gout, alcoholism, anxiety, depression, and panic attacks. Tr. 14, 21, 1566. Her application was denied initially and upon reconsideration. Tr. 14. On January 29, 2020, an initial hearing was held but then continued to obtain additional evidence. Tr. 14. On May 18, 2020, a telephonic hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-55. On June 2, 2020, the ALJ issued a decision finding plaintiff not disabled. Tr. 14-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the amended alleged onset date. Tr. 16. At step two, the ALJ determined the following impairments were medically determinable and severe: "fibromyalgia; anxiety; depression; bilateral foot pain; and right knee pain, status post total knee replacement in December 2018." Tr. 16-17. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17-18.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform a range of light work except:

> [S]he can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can frequently, but not constantly, handle and finger bilaterally. [Plaintiff] can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery. [Plaintiff] must be allowed to alternate between sitting and standing at will while remaining on task. [Plaintiff] can perform simple, routine tasks. [Plaintiff] can tolerate frequent incidental contact with coworkers and the general public, but only occasional contact with supervisors.

Tr. 18.

At step four, the ALJ determined that plaintiff was unable to perform any past relevant work. Tr. 21. At step five, the ALJ concluded, based on the VE's testimony, there existed a significant number of jobs in the national economy that plaintiff could perform despite her impairments. Tr. 21-22.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) failing to comply with 20 C.F.R. § 404.1520c in evaluating two State agency physician assessments; (2) discrediting plaintiff's long-term primary treating physician, Dr. William Brus, MD's, opinion ; (3) failing to comply with 20 C.F.R. § 404.1520c in evaluating two State agency psychologist assessments; (4) discrediting plaintiff's testimony; (5) ignoring all lay witness testimony; and (6) making a non-disability determination that was unsupported by substantial evidence. Pl.'s Opening Br. 3-20 (doc. 13). The Commissioner concedes harmful legal error as to all issues and that the ALJ's decision was not supported by substantial evidence.[2] Mot. Remand 2 (doc. 16). Thus, the sole issue on review is

---

[2] The Commissioner only makes one argument that supplemental vocational expert testimony is required to explain an inconsistency between plaintiff's RFC—which limited plaintiff to simple, routine tasks—and State agency testimony—which limited plaintiff to two-step commands. Other than that argument, however, the Commissioner does not assert any additional arguments "related to the context of the record, the issues raised by plaintiff, the ALJ's findings, or the proper legal remedy given the particular facts of this case." Makiah K. J. v. Comm'r of Soc. Sec. Administration, No. 6:19-CV-00313-JR, 2020 WL 569355, at *1 n.2 (D. Or. Feb. 5, 2020). As such, "the Court infers that the Commissioner agrees with plaintiff's analysis of the issues and only disputes the proper legal remedy on policy grounds." Id.

the proper legal remedy. Upon review of the record, the Court finds that remand for immediate payment of benefits is proper.

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

I.    **The ALJ failed to provide legally sufficient reasons for rejecting evidence.**

As noted above, it is undisputed that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for rejecting a variety of evidence in the record. The Commissioner does not raise any argument to the contrary. See Mot. Remand 2-10. In sum, the ALJ failed to provide legally sufficient reasons for rejecting evidence in four ways.

A.    **State Agency Assessments**

First, the ALJ failed to properly assess State agency assessments of plaintiff's limitations. An ALJ must articulate "how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [his or her] decision." 20 C.F.R. § 404.1520. State agency physicians concluded that plaintiff "was reasonably limited to light work involving simple instructions and limited social interaction." Tr. 19, 1370, 1389. Additionally, State agency

psychologists concluded that plaintiff was limited to "carry[ing] out [] two-step command[s] involving simple instructions." Tr. 1367, 1386.

The ALJ found that plaintiff could perform "light work," which is defined as involving "lifting no more than 20 pounds at a time with frequent lifting," and "simple, routine tasks." Tr. 18. In computing plaintiff's RFC, the ALJ referred to the State agency assessments by stating that "[t]he State agency medical and psychological consultants reviewed all available evidence in February and May 2019 before concluding that the claimant was reasonably limited to light work involving 'simple' instructions and limited social interaction." Tr. 20.

When assessing the State agency assessments, the ALJ failed to comply with 20 C.F.R. § 404.1520c. The ALJ failed to articulate the supportability or consistency of the State agency medical opinions regarding plaintiff's ability to perform "light work" or her limitation in performing jobs with "two-step commands with simple instructions." Simply put, it is unknown whether the ALJ credited or discredited these assessments. Moreover, the ALJ did not address plaintiff's two-step instruction limitation in his decision, nor did he include it in a hypothetical to the VE. Accordingly, the ALJ erred in assessing the State agency assessments.

### B.    Dr. Brus

Second, the ALJ failed to provide legally sufficient reasons for discrediting the opinion of plaintiff's long-time primary treating physician, Dr. Brus. In March 2019, Dr. Brus stated in a letter that plaintiff has "Chronic Fibromyalgia with Osteoarthritis in multiple joints impacting her ability to do any physical labor," and that she "has been treated with multiple medications with limited benefit in her symptoms." Tr. 1859. As such, Dr. Brus "recommended that [plaintiff] do sedentary [*sic*] work for no more than 20 hours per week." Id.

The ALJ found "the record does reasonably support the opinion offered in early 2019 by physician William Brus, M.D., that [plaintiff] is limited to part-time sedentary work." Tr. 20. Despite this finding, however, the ALJ "decline[d] to adopt Dr. Brus's assessment" because it "coincided with [plaintiff's] post-operative recovery from total knee replacement" when she was not yet "medically stationary," and plaintiff's condition later improved. Id.

The ALJ's conclusion was not supported by substantial evidence. First, Dr. Brus based his opinion of plaintiff's work limitations on plaintiff's chronic fibromyalgia and not her knee replacement. See Tr. 1859 (noting in the March 2019 letter plaintiff's fibromyalgia and not plaintiff's knee replacement). Additionally, the ALJ's reliance on plaintiff being "medically stationary" is contrary to other evidence in the record, which demonstrated that plaintiff continued to have post-operative pain after her knee replacement. See Tr. 1996, 2001-02 (noting plaintiff's bilateral foot pain and swelling following activity after her knee replacement). Accordingly, the ALJ's rejection Dr. Brus' opinion was not supported by substantial evidence.

### C.    Plaintiff's Testimony

Third, the ALJ failed to provide legally sufficient reasons for discrediting plaintiff's testimony. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the

reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."
Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL 1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Plaintiff testified she is unable to work full-time because she "can't keep a schedule" due to her impairments, given that "[she] never know[s] if [she's] going to be able to get out of bed or when [she's] going to be able to walk." Tr. 40-41. She further testified that her "body is just in a lot of pain constantly from [her] head to [her] feet" from her fibromyalgia. Tr. 41-42. In plaintiff's December 2018 Function Report, she alleged she could not work on a regular basis due to her impairments. Tr. 19, 1604. Plaintiff also reported that her impairments made it difficult to stand, move, or walk for prolonged periods, and her chronic pain interfered with her ability to sleep and left her "foggy headed." Tr. 19, 1604-05, 1608, 1611.

Here, the ALJ failed to provide specific reasons for rejecting plaintiff's testimony. See Tr. 19-20. The ALJ's only mention of plaintiff's hearing testimony was that plaintiff "has attempted to work multiple times during the alleged period of review, but that her combination of symptoms forced her to quit." Tr. 19. The ALJ offered that "[w]hile [plaintiff's] functional deficits may, in fact, preclude past work—it remains possible that more suitable work exists in the national economy that would accommodate her particular limitations." Id.

The ALJ also did not specifically address why plaintiff's allegations in her December 2018 Function Report were not credible.  Further, the ALJ failed to address plaintiff's report that her fibromyalgia pain "some days keeps [her] in bed." Tr. 1611.  The ALJ rejected plaintiff's testimony regarding her pain and discomfort by generally stating that an "inability to work without some pain and discomfort . . . does not necessarily satisfy the test for disability under the provisions of the Act." Tr. 20. Although the ALJ noted that plaintiff reported that she visited friends and family on a regular basis, drove a car, attended church, went shopping, and performed household chores, Tr. 19, the ALJ did not explain whether he found those reports to bear on plaintiff's credibility. Importantly, the ALJ's rejection of plaintiff's testimony appears at odds with his other findings that are consistent with plaintiff's testimony, including that there was "[e]vidence of post-operative knee pain, along with bilateral foot pain, ankle weakness, and wide-spread fibromyalgia symptoms" throughout the record that warranted additional limitations. Tr. 20. As such, the ALJ did not point to any specific evidence supporting a conclusion that plaintiff's testimony was not credible.

### D.    Lay Witness Testimony

Finally, the ALJ did not discuss any lay witness testimony that was submitted from plaintiff's mother, treating therapist, former co-worker, or son. Lay-witness testimony regarding a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff's mother submitted a third-party function report of plaintiff's symptoms, noting that her "hands swell[] up," "[h]er wrist and feet ache all the time," and that "she was in pain every day and she missed a lot of work." Tr. 1612-13. Plaintiff's treating therapist noted that

plaintiff's "physical ailments prevent her from engaging in many activities at this time." Tr. 1647. Plaintiff's former co-worker of sixteen years wrote that she saw plaintiff weekly, they spoke on the phone daily, and she watched plaintiff "become a victim of her body enduring pain in her joints and muscles." Tr. 1649. Lastly, plaintiff's son reported that he

> witnessed [plaintiff's] health decline over the last 10 years and more so the last 5. [He] witnessed her not be[ing] able to get out of bed due to swollen feet and severe pain in her legs and feet. [He] would have to come help her shower or grocery shop for her during these times. She ha[d] a hard time walking through stores . . . and you can just see the pain on her face and discomfort when on her feet.

Tr. 1651.

The ALJ's decision is entirely devoid of any articulation of his assessment of the lay witness testimony. Tanya L. L. v. Comm'r of Soc. Sec., No. 3:20-CV- 00078-BR, 2021 WL 981492, at *7-8 (D. Or. Mar. 16, 2021) ("The amended regulations, however, do not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements."). Thus, the ALJ's failure to address any of the lay witness testimony was reversible error.

## II.     The record has been fully developed and further proceedings are not useful.

The Commissioner broadly contends that a remand for further proceedings is warranted "to allow further development and consideration of the medical evidence and issues at steps four and five." Mot. Remand 5. Specifically, the Commissioner contends that supplemental vocational expert testimony is required to explain an inconsistency between plaintiff's RFC—which limited plaintiff to "simple, routine tasks"—and State psychologists' testimony—which limited plaintiff to carrying out "two-step command[s] involving simple instructions." Id. at 6-7.

Work involving simple, routine tasks is distinct from work involving "two-step" instructions. See Wheat v. Berryhill, No. 3:16-CV-01064-JR, 2017 WL 3951642, at *4 (D. Or. Sept. 8, 2017) ("[W]ork involving 'simple, routine tasks' is distinct from work involving '1-2

step tasks.'") (citing <u>Kimble v. Berryhill,</u> 2017 WL 3332256, *4 (D. Or. Aug. 4, 2017)

(collecting cases). Importantly, Reasoning Level One work under the Dictionary of Occupational

Titles ("DOT") constitutes work that requires an "understanding to carry out simple one- or two-

step instructions," whereas Reasoning Level Two work constitutes "tasks with more than one or

two steps [that] would require detailed instructions." <u>Rounds v. Berryhill</u>, 807 F.3d 996, 1003

(9th Cir. 2015).

 Here, the three jobs that the ALJ found that plaintiff could perform—routine clerk, router,

and collator operator—all constituted Reasoning Level Two work. Tr. 21-22. Essentially, the

ALJ's finding is at odds with the State agency psychologists' limitations: the ALJ found that

plaintiff could perform Reasoning Level Two work while the psychologists limited plaintiff to

Reasoning Level One work.

 Here, the inconsistency that the Commissioner points to does not create an issue that

warrants further proceedings. The Commissioner does not specifically assert where the record is

undeveloped, nor how further proceedings would be useful in developing the record. Despite the

inconsistency in plaintiff's RFC and the State agency psychologists' limitations, the

overwhelming evidence in the record demonstrates that plaintiff was unable to meet the

requirements of light work. Tr. 1703-15 (noting plaintiff's knee replacement); 1897-2004 (noting

plaintiff's significant bilateral foot problems); 1989, 2008 (noting plaintiff's fibromyalgia);

2109-11 (noting plaintiff's right-hip bursitis). Significantly, even the ALJ found that the record

reasonably supported Dr. Brus' opinion that plaintiff was limited to part-time sedentary work. Tr.

20. Given that this one inconsistency is the only fact-bound argument that the Commissioner

makes in support of a remand for further proceedings, the Court is unpersuaded—based on all

the evidence in the record—that the record is undeveloped and that further proceedings would be

useful. See Krista B. v. Comm'r Soc. Sec. Admin, No. 3:20-cv-01822-HL, 2021 WL 5235969,

*4 n.4 (D. Or. Nov. 10. 2021) (remanding for immediate payment of benefits despite an

inconsistency between the plaintiff's RFC and VE testimony of occupational reasoning levels)

(citing Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015)).

Moreover, other than the inconsistency between the State agency psychologists' opinions

and plaintiff's RFC, the Commissioner does not identify any outstanding factual conflicts in the

record or argue why a remand for further proceedings is necessary. The Commissioner's request

for further proceedings to "reevaluate" evidence essentially asks the Court for a "second

chance," which the Ninth Circuit has repeatedly rejected. See Benecke v. Barnhart, 379 F.3d

587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an

unfair 'heads we win; tails, let's play again' system of disability benefits adjudication"); Moisa

v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal,

should not have another opportunity to show that [the plaintiff] is not credible any more than [the

plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish

his credibility."). Thus, the Court concludes that the record has been fully developed, there are

no outstanding issues that must be resolved, and further proceedings would not be useful.

## III.    There is no uncertainty concerning plaintiff's disability.

Finally, the record, as a whole, does not create serious doubt that plaintiff is disabled.

When the improperly rejected evidence—including Dr. Brus' medical opinion, plaintiff's

subjective symptom testimony, and the lay witness testimony—is credited as true, there is no

uncertainty concerning plaintiff's disability. Indeed, the Commissioner does not independently

address this element and instead relies on its assertions concerning purported "ambiguities" in

the record to indicate the presence of "serious doubts" whether plaintiff is disabled. Mot.

Remand 4.

In sum, plaintiff applied for benefits approximately four years ago, and there are no

outstanding issues that would warrant further proceedings. Accordingly, this case is remanded

for the immediate payment of benefits.

## CONCLUSION

The Commissioner's decision is REVERSED, and this case is REMANDED for the

immediate payment of benefits.

IT IS SO ORDERED.

DATED this 4th day of February, 2022.


_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge